UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CHRISMAN MILL FARMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 17-011-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BRIAN R. BLAZER, | ) | **MEMORANDUM OPINION** |
| d/b/a CARPENTER BEE SOLUTIONS, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Chrisman Mill Farms, LLC, a retailer and wholesaler of carpenter bee traps, seeks a temporary restraining order and preliminary injunction against Defendant Brian Blazer, a patent holder. [Record Nos. 23, 24] The defendant filed a Motion to Dismiss or Transfer Venue under Rule 12(b)(2) of the Federal Rules of Civil Procedure prior to the plaintiff's Motion for injunctive relief. [Record No. 15] A hearing was held on April 10, 2017, to address both motions. The Court finds that it lacks personal jurisdiction over the defendant after considering the parties' briefs and arguments. As a result, this action will be transferred to the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1406, where venue is proper and a companion case is currently pending.

## I.   Background

Defendant Blazer owns U.S. Patent No. 8,375,624 ("the '624 Patent") which covers an insect trap meant for carpenter bees. [Record No. 12 at 1-2] In 2015, Chrisman Mill Farms, LLC, and its sole member Anthony Robinson (hereinafter "Chrisman Mill Farms" or "Robinson"), began selling traps that (unknown to them) infringed Blazer's patent. [*See*

-1-

Record No. 21-10 at 3-4]  When advised of the infringement, Robinson traveled to Blazer's home in Alabama to discuss a licensing agreement.  The visit was successful.  Blazer and Robinson entered into an agreement on December 29, 2015, under which Robinson (Chrisman Mill Farms) would continue selling the traps, but would pay a royalty of $3 per trap to Blazer. [Record No. 12 at 5]  The duration of the agreement was one year, lapsing in December 2016. [*Id.*]

Blazer and Robinson's business relationship went beyond their licensure agreement. Blazer also supplied partially-completed traps to Robinson.  [Record No. 12 at 5; Record No. 21 at 2]  Robinson would finish the traps, brand them with a Chrisman Mill Farms logo, and market them on numerous e-commerce sites, including Amazon.  [Record No. 21 at 2]

This agreement was lucrative for Robinson, who appeared to net a much larger profit on each trap than the $3 royalty being paid to Blazer.  [*See* Record No. 21-7 at 2]  As a result, Blazer sought to negotiate more favorable terms for a new contract.   Robinson proposed an exclusive licensure agreement but Blazer rejected the offer.  [Record No. 21-10 at 2]  Because of the apparent inability to reach new terms, Robinson sought the advice of a patent attorney and designed a new trap which he believed did not infringe the '624 Patent.  [Record No. 21-4 at 2]  Robinson notified Blazer of his intent to begin marketing the new trap, and provided Blazer a 5-day window to object and provide reasons why he believed the newly-designed trap infringed the '624 Patent.  [*Id.*]  From the record currently before the Court, Blazer never articulated why the new trap was infringing.  Instead, he notified Robinson via text message that he would be filing suit. [Record No. 21-5 at 2]  Blazer signed the text message, "welcome to federal court in Alabama."  [*Id.* at 3]

In anticipation of the threatened Alabama suit, Robinson filed the present action with this Court on January 6, 2017. [Record No. 1] Robinson seeks a declaratory judgment that the new trap, dubbed "Wood Bee Gone II" ("Bee Gone II"), does not infringe the '624 Patent. Around the time suit was filed, Robinson began marketing and selling the new trap. But Blazer jumped into action by sending claims construction letters to Amazon and at least three other online retailers, notifying them that the Bee Gone II trap infringed his '624 Patent. [Record No. 12 at 6-7; Record No. 24 at 3-5] In response, the retailers de-listed the Bee Gone II trap and notified Robinson of the issue. [*Id.*]

On February 27, 2017, Blazer filed a Complaint against Chrisman Mill Farms, LLC, in the United States District Court for the Northern District of Alabama. [Civil Action No. 1:17-320-JEO] The Complaint contains two counts: patent infringement and breach of contract. As to the breach of contract count, the Complaint claims that the parties had entered into a written contract and that Chrisman Mill Farms breached that contract by failing to pay the full amount of royalties owed under the contract. The Complaint further alleges a breach of contract by [Robinson's] "refusing to recognize the majority ownership interest . . . that was granted to [Blazer] by the parties' agreement." To that end, it states "[Blazer] is entitled to specific performance to remedy this breach in the form of a judgment that [Blazer] owns 51% of [Chrisman Mill Farms] as provided in the parties' agreement." The written contract is included as "Exhibit C," but "Exhibit C" does not appear to be an authentic document.

Immediately after filing the Alabama action, Blazer responded to the Complaint in this Court with a Motion to Dismiss for Lack of Personal Jurisdiction. [Record No. 15] Blazer argues that, because he never traveled to Kentucky, and because the declaratory judgment action does not arise out of his business activity in Kentucky, the Commonwealth's long-arm

statute does not reach him. Further, because the plaintiff has not alleged "other activities" by Blazer, other than text messages, directed at the forum, exercise of personal jurisdiction over him does not comport with due process. Blazer's Motion to Dismiss does not reference the claimed 51% stake in Chrisman Mills Farms.

Blazer amended his Complaint in the Northern District of Alabama on March 5, 2017. [Civil Action No. 1:17-320-JEO, Record No. 3] The Amended Complaint retains language from the original Complaint, stating that "[i]n 2016, Mr. Robinson, acting on behalf of Defendant, traveled to Plaintiff's residence in Alabama on at least one occasion during which he offered Mr. Blazer a membership position in Defendant Chrisman Mill Farms LLC." However, the Amended Complaint removes all references to the 51% ownership interest, and claims a breach of contract based only upon a failure to pay royalties. Further, it replaces "Exhibit C" with what appears to be an authentic, signed and notarized contract that does not contain the 51% ownership-interest language.

Apparently unaware of Blazer's Amended Complaint (and its removal of the ownership- stake claim), Robinson moved in this Court on March 20, 2017, for leave to file a second Amended Complaint. [Record Nos. 18, 20] Robinson argues that "[j]ustice necessitates the entry of a Second Amended Complaint due primarily to the Defendant's new claim to own 51% of Chrisman Mill Farms, LLC." Substantively, however, the proposed Second Amended Complaint does more. For the first time, the document asserts diversity of citizenship as an additional basis for federal jurisdiction. Further, it substitutes the Lanham Act, 15 U.S.C. § 1125, for the Sherman Act, 15 U.S.C. §2, as another basis for federal question jurisdiction (in addition to the patent issue under 28 U.S.C. § 2201).

Simultaneous with his proposed Second Amended Complaint, Robinson sought to stay consideration of Blazer's Motion to Dismiss, until such time as the proposed Second Amended Complaint was addressed by the Court. [Record No. 19] Robinson also responded to the Motion to Dismiss. [Record No. 21] Robinson argues in his response that Blazer is subject to personal jurisdiction under the Kentucky long-arm statute, and due process, because he has established minimum contacts here and because this action arises out of Blazer's business conduct in Kentucky. Specifically, he argues that "[t]he declaratory judgment causes of action relate[] to the patent and the causes of action that relate to the improper enforcement activities of the Defendant all clearly arise from the business relationship between the Plaintiff and Defendant." Additionally, he contends that his breach of warranty claim and tortious interference claim all arise out of Blazer's activities directed at the Commonwealth, which fit into other provisions of the long-arm statute.

Two weeks after filing the proposed Second Amended Complaint and Motion for a Stay, Robinson filed a Motion for a Temporary Restraining Order and Preliminary Injunction [Record Nos. 23, 24] and withdrew the Motion to Stay [Record Nos. 25, 28]. He seeks injunctive relief requiring Blazer "to withdraw notices of patent infringement to vendors of the WOOD BEE GONE II carpenter bee trap and to refrain from issuing any additional notices." [Record No. 23 at 1] A hearing was held on April 10, 2017, at which time the parties addressed the Motion for injunctive relief and the Motion to Dismiss. [Record Nos. 26, 27, 30]

## II.    Motion to Dismiss

The plaintiff believes that the Court need not decide the jurisdictional question prior to ruling on the preliminary injunction. Robinson argues that "the pending Motion to Dismiss based on lack of jurisdiction need not be decided prior to the grant of preliminary relief because

-5-

courts have the authority to issue preliminary injunctions and other orders [] to maintain the status quo while they are inquiring into whether they have jurisdiction." [Record No. 24 at 9] This argument is unconvincing. The plaintiff's authority, *Continental Cablevision of Mich., Inc. v. Edward Rose Realty, Inc.*, 840 F.2d 16 n.7 (6th Cir. 1988) (table), dealt with a situation more emerging than present here. Because a fully-briefed Motion to Dismiss is pending before the Court, that motion will be resolved before injunctive relief is considered. *See Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967) ("[P]reliminary matters such as defective service, personal jurisdiction and venue should be raised and disposed of before the court considers the merits or quasimerits of a controversy.").

The Court first considers what law to apply in adjudicating this controversy. The United States Court of Appeals for the Federal Circuit has exclusive subject-matter jurisdiction over patent-law cases. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005). It is tasked with the "special responsibility to foster national uniformity in patent practice." *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995). Therefore, when actions are "intimately involved" with the patent laws, Federal Circuit precedent applies. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

The Amended Complaint is primarily a suit for a declaratory judgment regarding a patent. Therefore, Federal Circuit precedent applies. *HealthSpot, Inc. v. Computerized Screening, Inc.*, 66 F. Supp. 3d 962, 967 (N.D. Ohio 2014) (quoting *Akro Corp.* 45 F.3d at 1543) ("Federal Circuit law governs personal jurisdiction over a patentee defending against a declaratory judgment action because the action is 'intimately involved with the substance of the patent laws.'"). The plaintiff also raises claims under state law, such as "tortious interference with existing and prospective business relationships." [Record No. 12 at 3]

However, because the patent infringement issue will be a "significant factor" in determining the state-law claims, Federal Circuit law applies.[1] *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998).

For purposes of the Motion to Dismiss, because the parties have not yet conducted discovery, the plaintiff's allegations regarding jurisdiction are subject to deference. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). Specifically, "in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). The Court should "accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id*. The issue of jurisdictional was addressed at the April 10th hearing. However, because the focus of that hearing was on the motion for injunctive relief, the Court holds the plaintiff only to the *prima facie* standard for establishing personal jurisdiction.

Turning to the merits of the Motion to Dismiss, jurisdiction over an out-of-state defendant is determined in a two-step process. The first question is "whether [the] forum state's long-arm statute permits the assertion of jurisdiction[.]" *Graphic Controls Corp. v. Utah Med. Prod., Inc.*, 149 F.3d 1382, 1385 (Fed. Cir. 1998). In the second step, the Court determines whether an assertion of personal jurisdiction over the out-of-state defendant comports with federal due process. *Id.* The Court will address the due process inquiry first.

---

[1] The claim of breach of implied warranty is the only claim for which patent law is not related. And that issue is tangential to the other claims and cannot stand alone as a basis for diversity jurisdiction—the amount in controversy does not exceed the jurisdictional threshold. [*See* Record No. 12 at 13-14; 28 U.S.C. § 1332(a).]

### a.    Due Process

A court possess jurisdiction over a defendant either generally or specifically.  *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008) ("[T]he Supreme Court has drawn a distinction between 'specific' jurisdiction and 'general' jurisdiction.").  Where general jurisdiction exists, a person or entity is subject to suit in the forum on any basis.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984) ("When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant.").  By contrast, for specific jurisdiction, "the litigation results from alleged injuries that 'arise out of or relate to' [] activities [that occur in or are directed at the forum]."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  While the parties focus their arguments on the allegation of specific jurisdiction, the plaintiff does not concede that general jurisdiction is lacking.

### i.    General Jurisdiction

Defendant Blazer is an individual doing business as "Carpenter Bee Solutions."  A natural person is subject to suit generally in a forum where they are physically present, domiciled, or have consented.  *See Brown v. Twentieth Century Fox Home Entertainment*, No. 6:14-CV-147-KKC, 2015 WL 5081125, at *5 (E.D. Ky. Aug. 27, 2015) (citing *Pennoyer v. Neff*, 95 U.S. 714 (1878)); *Burnham v. Superior Court of California, Cty. of Marin*, 495 U.S. 604, 619 (1990) (discussing physical presence alone as satisfying due process).  Here, the parties agree that Blazer is not domiciled in Kentucky, nor has he been present for purposes of service of process.  Therefore, as a natural person, he can only be subject to suit in Kentucky, generally, if he has consented.  Blazer expressly rejects the notion that he has consented

[Record No. 15 at 6], but the plaintiff argues otherwise. According to the plaintiff, the defendant's claim to a 51% ownership stake in Chrisman Mill Farms means that "Blazer has consented to resolve his differences with the Plaintiff in a Kentucky court." [Record No. 21 at 7] However, the ownership stake was never alleged before this Court, and was expressly disavowed during the recent hearing. Instead, it was alleged by the defendant in his related infringement suit in the Northern District of Alabama. [Civil Action No. 1:17-320-JEO, Record No. 1] On March 5, 2017, the defendant filed an Amended Complaint in that action removing the allegation of an ownership stake in Chrisman Mill Farms. [*See* Civil Action No. 1:17-320-JEO, Record No. 3.] Moreover, Robinson has maintained consistently than no ownership stake was ever granted to Blazer. [*See* Record No. 21-3 at ¶ 16.] Therefore, the parties agree on the bottom-line: Blazer does not possess an ownership stake in Chrisman Mill Farms. Accordingly, there is no basis to allege that Blazer has consented to the general jurisdiction of the Kentucky courts.

It is also unlikely that a natural person may be subject to general jurisdiction on the basis of their business activity. Unlike corporations, natural persons "are [physically] present only in one place at a time." *Fidelity Nat'l Title Ins. Co. v. M & R Title, Inc.*, 21 F. Supp. 3d 507, 514 n.1 (D. Md. 2014). Even assuming this possibility, Blazer's business activity in Kentucky would not suffice. Under *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), a court may assert general jurisdiction over a foreign corporation[2] only where the corporation's affiliations within the forum state "are so constant and pervasive as to render it essentially at home in the forum State." *Id.* at 751 (quoting *Goodyear Dunlop Tires Operations, S.A. v.*

---

[2]     The term "foreign" may mean both non-domestic and/or sister-state. *Fidelity Nat'l Title Ins. Co.*, 21 F. Supp. 3d at 514 n.1.

*Brown*, 564 U.S. 915, 919 (2011)).  The First Amended Complaint alleges that "Blazer purposely, regularly, and continuously conducts business in the Commonwealth of Kentucky and within this judicial district and division[.]"  [Record No. 12 at ¶ 11]  But even accepting this as true, it is not enough to meet the plaintiff's burden.  The defendant in *Daimler* conducted "billions of dollars" worth of sales in the forum state in the year the suit was brought.  134 S.Ct. at 763 (Sotomayor, J., concurring in the judgment).  Daimler sold "tens of thousands of cars," and "provide[d] service and sales support to customers throughout [California]."  *Id.* Even so, that volume of in-state sales was not enough to make Daimler "at home" in California, because they constituted only 2.4% of the defendant's worldwide sales.  134 S.Ct. at 752, 760 ("Daimler's slim contacts with the State hardly render it at home there.").

Chrisman Mill Farms is likely unable, at this stage, to provide sales figures for Blazer's products, including figures for how Blazer's sales within Kentucky compare to elsewhere. Even so, the plaintiff's allegations fall short of even a *prima facie* claim for general jurisdiction.  Chrisman Mill Farms alleges that Blazer's business conduct in Kentucky is "purpos[ful], regular[], and continuous[]."  [Record No. 12 at ¶ 11]  This allegation is cast in terms relevant mainly to *specific*, rather than *general* jurisdiction.  *Daimler,* 134 S.Ct. at 761 ("The words 'continuous and systematic' were used in *International Shoe* to describe instances in which the exercise of *specific* jurisdiction would be appropriate.").  Because the plaintiff does not allege that Blazer's conduct renders him "at home" in Kentucky, the plaintiff has failed to make a *prima facie* showing of general jurisdiction.  *Id.* ("the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so

'continuous and systematic' as to render [it] essentially at home in the forum State.") (quoting *Goodyear Dunlop Tires Operations, S.A.*, 546 U.S. at 919) (internal marks omitted).

### ii. Specific Jurisdiction

Unlike general jurisdiction, specific jurisdiction exists over an individual when the suit arises out of or relates to the individual's conduct within the forum states. *Burger King Corp.*, 471 U.S. at 472. For most patent infringement cases, this obligation is easily met because the defendant-infringers sells products in the forum state, and the suit is causally-related to those sales. *See Avocent*, 552 F.3d at 1332 ("[F]or purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum."). However, declaratory judgment actions are different. In *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), and cases that followed, the Federal Circuit has set a higher bar for specific jurisdiction in declaratory judgment actions. The Court recognized an overarching policy interest in permitting a patentee to enforce their patent without subjecting themselves to suit in a foreign jurisdiction. 148 F.3d at 1360-61 ("Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum."); *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003) (characterizing *Red Wing Shoe*'s holding as "policy considerations unique to the patent context"). Because the purpose of a declaratory judgment is to "to clear the air of infringement charges," the action does not arise out of or relate to any business activity, such as sales, the defendant may undertake in the forum states. *Red Wing Shoe*, 148 F.3d at 1360 ("Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but

instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit.").

Due process permits a patentee to be subject to a declaratory judgment action in a forum only when the patentee actually undertaken actions within the forum to enforce the patent at issue (such as hiring an in-forum attorney for that purpose) or where it has engaged in "other activities" in the forum from which the declaratory judgment action be said to arise from or to which it relates. *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351 (Fed. Cir. 2003). The "other activities" have most often centered around *exclusive* licensing agreements. For example, a patentee's exclusive licensing of the patent to an entity in the forum state, where the in-forum entity was given the right to sue others for patent infringement, was held to be "other activities" sufficient for personal jurisdiction. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356 (Fed. Cir. 2006). Additionally, where a patent was licensed exclusively to in-forum entity, and that entity was given the right to sue others for patent infringement, and the patentee was *obligated* to enforce the patent, jurisdiction was found proper. *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995). However, merely attempting to license a patent in the forum state is not enough. *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1356 (Fed. Cir. 2002). And even where a patentee *has* licensed their patent in the forum state (even to multiple non-exclusive licensees), such conduct is not sufficient for personal jurisdiction where the patentee's only relationship with the licensees is to collect royalty income. *Red Wing Shoe,* 148 F.3d at 1357-58.

Particularly relevant here, enforcement activity directed at an in-forum entity, such as cease and desist letters sent to a within-forum recipient, is not enough. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1340 (Fed. Cir. 2008) (citing *Breckenridge*, 444 F.3d

at 1362) ("[A] patent owner may, without more, send cease and desist letters to a suspected infringer, or its customers, without being subjected to personal jurisdiction in the suspected infringer's home state."). Under *Red Wing Shoe* and its progeny, the patentee must either undertake enforcement activity within the forum state itself, or have an exclusive licensing agreement within the forum that, for example, specifically contemplates enforcement. "[O]ur case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities." *Breckenridge*, 444 F.3d at 1366.

This rule places a patentee "at home" for suits regarding patent enforcement when the patentee, through an exclusive licensee, makes the forum a hub of its enforcement activity or the base of the products' sales and marketing activates. If a patentee or its exclusive agent conducts meaningful enforcement activities in Kentucky, it is subject to a declaratory judgment action in Kentucky, even if the latter suit does not, in but-for fashion, arise out of it or its agent's Kentucky-based activity. *See Avocent*, 552 F.3d at 1337 (disavowing but-for test in favor of a "permissive view of the 'relates to' requirement").

The present suit mirrors *Avocent* with respect to the patentee's enforcement letters. The plaintiff in Avocent (a manufacturer of keyboard-video-mouse "KVM" switches), sought a declaratory judgment action in the United States District Court for the Northern District of Alabama against Aten International Co., a foreign corporation that also produced KVM switches and held patents for certain KVM-related technology. 552 F.3d at 1327. Aten undertook enforcement against Avocent by sending three letters. *Id.* The first letter was from counsel for Aten to Avocent's president in Alabama, notifying Avocent of Aten's patent and

possible infringement. *Id.* The second letter was from Aten's subsidiary to Amazon, encouraging Amazon to discontinue sales of Avocent's products which it alleged infringed Aten's patents. *Id.* The final letter was from Aten's counsel to Avocent's counsel, both outside of Alabama, repeating the infringement allegation. *Id.* at 1327-28.

Avocent filed suit in the Northern District of Alabama in response to the three letters, seeking a declaratory judgment of non-infringement, damages under the Lanham Act, and damages for tortious interference with prospective advantage. 552 F.3d at 1328. The district court, however, dismissed the entire action for lack of personal jurisdiction. *Id.* It held that, under *Red Wing Shoe*, 148 F.3d at 1360-62, Aten "did not purposefully submit itself to jurisdiction in Alabama by sending the three letters listed above." 552 F.3d at 1328 (citing *Avocent Huntsville Corp. v. Aten Int'l Co.,* No. 07–CV–625, slip op. at 10 (N.D. Ala. Aug. 30, 2007).[3] Blazer's text message to Robinson and his claims construction letters to the online retailers cannot be meaningfully distinguished from the correspondence at issue in *Avocent.* They are not, therefore, sufficient to establish personal jurisdiction over Blazer.

The only conduct left to consider is Balzer's licensing agreement. *See Breckenridge*, 444 F.3d at 1366 ("Where a defendant-licensor has a relationship with an *exclusive* licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement.") (emphasis added). Blazer previously had a licensing agreement in the forum with Plaintiff Chrisman Mill Farms. The text of the licensing agreement, however, does not speak of exclusivity. [*See* Record No. 20-1 at ¶ 36 (proposed Second Amended Complaint

---

[3]     The district court also rejected Avocent's attempt to argue that Aten was subject to general jurisdiction in Alabama based on a purported "stream of commerce" theory. 552 F.3d at 1328

identifying the contract as "Exhibit F"); Record No. 20-1 at 58-59 "Exhibit F".] And the plaintiff's own exhibit suggests that Blazer was not amenable to an exclusive licensing agreement. [*See* Record No. 21-10 at 2 (email from defendant to counsel for plaintiff, describing the terms of a proposed, but rejected, contact that "prevented [Blazer] from licensing anyone else under [his] patent").]

Chrisman Mill Farms does not allege actual exclusivity. Instead, it argues that Blazer "relied upon Chrisman Mill Farms to conduct enforcement of the '624 Patent, *much like* an exclusive licensee." [Record No. 21 at 3 (emphasis added)] It is unclear whether enforcement activity alone, absent an exclusive licensing agreement, may constitute "other activities" sufficient for personal jurisdiction. Counsel for Blazer argued at the hearing that *every* licensee has an incentive to engage in enforcement activity. That undoubtedly is true. And *Breckenridge* provides that a level of control must be required by the contract. "In particular, our case law requires that *the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities*." 444 F.3d at 1366. The licensing agreement here does not, by its text, contemplate any of the above. Neither does the plaintiff argue that a verbal agreement existed supplemental to the written contract. Instead, it alleges that the defendant permitted it to engage in, and assisted it in, enforcement activity:

> The Defendant provided Chrisman Mill Farms with guidance on how to determine if a competitor was an infringer. The Defendant also supplied a template claims construction chart (Exhibit I) and cease and desist letter for the Plaintiff to complete and use with enforcement activities. Exhibit C, para. 12. This relationship whereby the Plaintiff was to enforce the Defendant's '624 Patent is also mentioned in an e-mail from the Defendant to Plaintiff's counsel.

Exhibit J. The Plaintiff also purchased potentially infringing products for enforcement purposes. Exhibit K.

[Record No. 21 at 3] Blazer's e-mail to plaintiff's counsel acknowledges Chrisman Mill Farms's enforcement activity. It states, "[] as you are well aware, Mr. Robinson has been actively enforcing my patent. Having multiple people removed from selling bee traps online. He has profited greatly from the enforcement of my patent." [Record No. 21-10 at 2] But this suggests, at most, extra-judicial patent enforcement by the plaintiff. During the hearing, counsel for both parties agreed that Blazer continued his *own* patent enforcement during the time that Chrisman Mill Farms/Robinson was engaging in enforcement activity.

Without an exclusive licensing agreement, and without evidence to suggest that the in-forum enforcement activity was anything other than incidental to the non-exclusive licensing agreement, Chrisman Mills Farms's attempt to obtain personal jurisdiction in this forum is without caselaw support. Moreover, it is not clear that extending personal jurisdiction over Blazer would comport with the bedrock jurisdictional test: fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Nothing in the Record suggests that Blazer sought out the licensing agreement. The plaintiff has attached as exhibits, and not controverted, Blazer's allegations from the Alabama pleadings that all business dealings took place through Robinson's travel to Alabama. [Record No. 21-1 at 5, 7 (Original Complaint pagination 4, 6)] Blazer is adamant that he has never been to Kentucky for any purpose related to his business or patent enforcement.[4] That matters. In *Xilinx, Inc. v. Papst*

---

[4] "Defendant has never visited Plaintiff's business in Kentucky, has never been to any trade shows in Kentucky, and in fact has never traveled to Kentucky for any purpose related to his Carpenter Bee Solutions business or the patent-in-suit, U.S. 8,375,624 ("the '624 Patent")." [Record No. 15 at 2-3]

*Licensing GmbH & Co. KG*, 848 F.3d 1346, 1357 (Fed. Cir. 2017), the Federal Circuit found personal jurisdiction proper because representatives from the foreign patent-holder traveled to the forum state to "meet with [the plaintiff] in person to discuss [the patentee's] infringement contentions and licensing offer with respect to the patents-in-suit."

This would be a closer case if Kentucky became the *de facto* center of enforcement for the '624 Patent despite a lack of an exclusive agreement, or if Blazer had traveled to Kentucky for any purpose related to his contract with Chrisman Mill Farms or patent enforcement. However, taking the uncontroverted facts as true, and construing all inferences in the plaintiff's favor, the Court is limited to the following conclusions: (i) Blazer entered into a non-exclusive licensing agreement with terms limited to the payment of royalties; (ii) in addition to the non-exclusive agreement, Blazer sold partially completed traps to the plaintiff; (iii) Blazer permitted, assisted in, and perhaps encouraged Chrisman Mill Farms to engage in enforcement activity.

These facts do not establish a *prima facie* case for personal jurisdiction under *Red Wing Shoe* and its progeny. While the parties had more than a licensor-licensee agreement, their contract lacked exclusivity and did not impose specific obligations on the other. The plaintiff traveled numerous times to Alabama, while the defendant never traveled to Kentucky. And attempts to enter into an exclusive agreement failed—the defendant was not interested in exclusivity. When those attempts failed, the plaintiff designed a new product with hopes of avoiding the defendant's patent. Due process does not permit the Blazer to face suit in Kentucky because of his non-exclusive and now-dissolved business relationship that is temporally-separated from the present action.

The present declaratory judgment action does not arise out of or relate to any enforcement activity that took place in Kentucky, and Blazer did not engage in "other activities" as defined by relevant caselaw. The Court, therefore, finds that Blazer has not purposefully availed himself of Kentucky for purposes of the declaratory judgment action. Exercising jurisdiction over Blazer would not comport with due process.

### b. Kentucky Long-Arm Statute

The second part of the test for personal jurisdiction is whether the defendant is amendable to suit under the forum-state's long-arm statute. In construing the meaning of state long-arm statutes, "we elect to defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prod., Inc.*, 149 F.3d 1382, 138-86 (Fed. Cir. 1998). In fact, the Kentucky Supreme Court has held that Kentucky long-arm statute's reach is *not* co-extensive with the limits of federal due process. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) ("Federal due process cannot act to expand the reach of Kentucky's long-arm statute beyond its statutory language."). However, despite the parties' spirited arguments regarding the long-arm statute, the Court need not address the issue. Because Defendant Blazer is not amendable to suit under due process, the inquiry necessarily ends there.

### III. Anti-Trust, Tortious Interference, and Other Claims

The defendant also argues that this Court is an improper venue for the plaintiff's antitrust cause of action, and that the defendant has failed to state a claim because he has not so much as attempted to allege the contours of the relevant market, or made any of the other necessary showings. [Record No. 15 at 8] In response, the plaintiff wishes to substitute a

Lanham Act (unfair competition) claim in place of the Sherman Act (antitrust) claim, by way of his proposed Second Amended Complaint. [Record No. 20] The defendant also alleges that this Court lacks subject matter jurisdiction over the plaintiff's tortious interference and breach of warranty claims, because diversity jurisdiction has not been properly plead. [Record No. 15 at 9] These arguments, whatever their merit, need not be addressed here. The plaintiff's attempt to cure these defects through a Second Amended Complaint is to no avail.

In *Avocent* the Federal Circuit held that the plaintiff's Lanham Act claim could not serve as an independent basis for jurisdiction in what was otherwise a declaratory judgment action. 552 F.3d at 1340. The Court held that, "because the non-patent issues in this case are 'intimately linked to patent law,' Federal Circuit law regarding due process must be applied to the question of personal jurisdiction over [Blazer] with respect to *all* claims." *Id.* (quoting *Breckenridge*, 444 F.3d at 1362) (emphasis added). Therefore, personal jurisdiction remains lacking regardless of whether the plaintiff wishes to raise Sherman Act or Lanham Act claims, and regardless of his amount-in-controversy allegation. Regarding the stand alone state court claim, breach of implied warranty claim, plaintiff's damages total no more than $9,300. [Record No. 15 at 11; Record No. 12 at 13-14; Record No. 20-1 at 6] That claim cannot support jurisdiction under 28 U.S.C. § 1332(a).

## IV.    Remedy

Title 28 of the United States Code, section 1406, permits the Court to transfer a case because of improper venue or for lack of personal jurisdiction. *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999) (discussing distinction between a §1404 transfer and a § 1406 transfer); *Martin v. Stokes,* 623 F.2d 469, 474 (6th Cir. 1980) ("[28 U.S.C.] §1406(a) provides the basis for any transfer made for the purpose of avoiding an obstacle to

adjudication on the merits in the district court where the action was originally brought.  That defect may be either improper venue or lack of personal jurisdiction.").  Under the statue "the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  *Bilek v. Burris*, No. CIV.A. 3:10-13-DCR, 2010 WL 4629616, at *9 (E.D. Ky. Nov. 8, 2010) (quoting 28 U.S.C. § 1406(a)).

Here, a transfer is in the interest of justice.  As an initial matter, a companion case is already pending in the Northern District of Alabama.  This is a live and active controversy, and the plaintiff has made at least a colorable claim that he is entitled to a preliminary injunction.  "The Supreme Court in *Goldlawr* [*v. Heiman*, 369 U.S. 463 (1962)] held that congressional intent in adopting § 1406(a) included a recognition that 'the interest of justice' may require the transfer of a complaint so that a plaintiff would not be penalized by 'justice-defeating technicalities.'"  *Kinergy Corp. v. Conveyor Dynamics Corp.*, No. CIV.A.3:99CV-407-S, 2001 WL 1774435, at *2 (W.D. Ky. Feb. 6, 2001) (quoting *Goldlawr*, 369 U.S. at 467).  Dismissing this case outright would unnecessarily penalize the defendant for attempting to obtain the most convenient forum for this live controversy.  The *Goldlawr* Court recognized that § 1406(a) is "in accord with the general purpose . . . of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits."  369 U.S. at 466-67.

To be sure, "a district court cannot transfer [a case] to another district court without first determining if the transferee court is one in which the action could have been brought."  *In re Bd. of Regents of Univ. of Texas Sys.*, 435 F. App'x 945, 947 (Fed. Cir. 2011).  This declaratory judgment action could have been brought originally in the Northern District of Alabama, where venue is proper and personal jurisdiction obtains.  The defendant is domiciled

in Alabama and, therefore, is subject to general jurisdiction in its courts.  Further, regardless of whether 28 U.S.C. § 1391 or 28 U.S.C. § 1400(b) applies, venue is proper in Alabama because of the defendant's residency.

## V.     Conclusion

The Federal Circuit has crafted a narrow due process rule for personal jurisdiction in the patent declaratory judgment context.   Transfer of venue is appropriate because the defendant's relationship with Kentucky is not sufficient to meet that test.  Being assured that it lacks jurisdiction over the person of the defendant, it would be improper for the Court to consider injunctive relief, which requires a merits inquiry. Therefore, based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      Defendant Brian Blazer's Motion to Dismiss or to Transfer Venue [Record No. 15], in as much as it seeks a transfer of venue, is **GRANTED**.   The motion is otherwise **DENIED**.

2.      Plaintiff Chrisman Mill Farms, LLC's Motion for a Temporary Restraining Order and a Preliminary Injunction [Record No. 23] is **DENIED**, without prejudice to being renewed following transfer.

3.      Plaintiff Chrisman Mill Farms, LLC's Motion to file a Second Amended Complaint [Record No. 18] is **DENIED**, without prejudice to being renewed following transfer.

4.      The Clerk of Court shall **STRIKE** Defendant Brian Blazer's Supplemental Opposition to Plaintiff's Motion for a Temporary Restraining Order [Record No. 32] from the Record, as an unauthorized sur-reply.

5.	Plaintiff Chrisman Mill Farms, LLC's Motion to Strike [Record No. 34] is **GRANTED**.  The Clerk of Court shall **STRIKE** the defendant's Opposition to the plaintiff's Second Motion for Leave to File a Second Amended Complaint [Record No. 33] from the Record, as untimely under Local Rule 7.1(c).

6.	In accordance with 28 U.S.C. § 1406(a), this civil action is **TRANSFERRED** to the United States District Court for the Northern District of Alabama, Eastern Division.

7.	The Clerk of Court is **DIRECTED** to **TRANSFER** this matter in accordance with the Court's instructions set forth above.

This 19th day of April, 2017.

Signed By:

_Danny C. Reeves_  DCR

United States District Judge